**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| TAYLOR H. TAYLOR, SR., § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:04-CV-366-Y |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF SOCIAL SECURITY § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff Taylor H. Taylor brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income or SSI benefits under Title XVI of the Social Security Act.

Taylor protectively filed for SSI benefits on November 21, 2001, alleging he has been disabled since December 11, 1993 because of a heart condition and back pain. (Tr. 51, 59). After the Social Security Administration denied Taylor's application both initially and on reconsideration,

Taylor requested a hearing before an administrative law judge (the "ALJ"), and ALJ Randolph D. Mason held a hearing on November 25, 2003 in Fort Worth, Texas. (Tr. 275). Taylor was represented by counsel. On December 16, 2003, the ALJ issued a decision that Taylor was not disabled or entitled to SSI benefits because he retained the capacity to perform light work activity. (Tr. 11-18). The Appeals Council denied Taylor's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c). An impairment is not severe if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. *See Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-3p. At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 416.920(d). Fourth, if disability cannot be found on the basis of

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 2**

claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(e). And fifth, the impairment must prevent the claimant from doing any work in light of the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work. *Id.* A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 3**

C.  ISSUE

Whether the ALJ correctly applied the law in finding that Taylor has no severe mental impairment, and whether that finding is supported by substantial evidence.

D.  ADMINISTRATIVE RECORD[1]

The administrative record filed by the Commissioner contains the following information:

1.  Claimant History

Taylor was born August 25, 1951, and he was graduated from high school in 1969. (Tr. 65, 277-78). His past relevant work experience includes truck driving and a job as a laundry worker in a nursing home. (Tr. 72). Taylor last worked in 1993.

Taylor completed a Salvation Army sobriety program in 1996. (Tr. 271). He also participated in an in-patient Veteran's Administration (VA) program for treatment of an adjustment disorder with depressed and anxious mood. He was discharged from that program on December 5, 1996.[2] (Tr. 271-74).

Taylor has received treatment at the VA medical clinic for a variety of physical problems, including hypertension and a heart condition that required surgery. VA treatment notes from June 2001 indicate that Taylor carried an ongoing diagnosis of a generalized anxiety disorder and was taking an anti-anxiety drug to control his symptoms. (Tr. 223).

---

[1] Because Taylor does not challenge the ALJ's assessment of his physical impairments, a review of the record will be limited to records relevant to Taylor's mental condition.

[2] Taylor asserts a disability onset date of December 1993, but did not file for SSI benefits until December 2001. SSI benefits are not paid for any months of disability preceding the application for benefits. *See* 20 C.F.R. § 416.335. Accordingly, the relevant inquiry is whether Taylor was disabled as of the date he applied for benefits.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 4**

Taylor underwent a consultative psychiatric evaluation with Tara Reddy, M.D., on April 1, 2002. (Tr. 118). Taylor reported battling depression, stress, and anxiety since 1995. He felt better with medication, but was still isolative and disliked being around people. His sleep and appetite varied, but he reported no weight changes. (Tr. 118). He complained of being unable to focus or sustain attention, and felt tired most of the time. He did not get along well with others. He described no psychotic symptoms or panic disorder symptoms.

At the time of his evaluation, Taylor lived with his girlfriend. His bedtime was about 11 p.m., and he normally awoke between 7 a.m. and 11 a.m. He could clean, drive, and handle his mail, but his girlfriend did the cooking and laundry. (Tr. 118). He shopped with his girlfriend, watched television, walked, and occasionally attended church services. He had been an alcoholic for many years, but completed a detoxification program in 1995. (Tr. 118-19).

Taylor was casually and neatly dressed. He was cooperative and made good eye contact, and his psychomotor skills were observed to be within normal limits. Taylor exhibited a dysphoric mood and broad affect. His remote memory was good, and recent memory was fair, but his immediate recall was impaired and his concentration was poor. (Tr. 199). He demonstrated abstract thinking, and his judgment was intact. His insight and impulse control were rated as good, and he exhibited average intelligence. Pace and persistence were considered slow.

Reddy diagnosed major depression, recurrent, moderate. (Tr. 119). Reddy assessed a current Global Assessment of Functioning score of 60, with a prior score of 62-63,[3] and assigned

---

[3] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)(DSM-IV). A GAF score of 51-60 reflects

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 5**

a good prognosis with treatment. (Tr. 120).

State agency medical consultant A. Boulos, M.D., reviewed Taylor's file and indicated that Taylor had major depression and a substance addiction disorder that was in full remission. (Tr. 135-47). Boulos opined that Taylor was moderately restricted in his activities of daily living, mildly restricted in social functioning, and moderately impaired in his ability to maintain concentration, persistence or pace. (Tr. 145). There were no documented episodes of decompensation. Boulos also completed a mental residual functional capacity assessment, (Tr. 131), and opined that Taylor retained the ability to understand and carry out simple instructions, interact with co-workers and supervisors, and adapt to routine changes in a work setting. (Tr. 133).

2. ALJ Decision

The ALJ found that Taylor had not engaged in substantial gainful activity since filing his application for SSI benefits and had the following severe impairments: coronary artery disease, cervical degenerative disc disease, and low back pain. (Tr. 17). The ALJ expressly found that Taylor had no severe mental impairment.

After deciding that Taylor had the residual functional capacity for light work activity that allowed an opportunity to alternate sitting and standing, the ALJ noted that this would preclude Taylor from returning to any of his past relevant work. However, based on the vocational expert evidence, the ALJ concluded that there was other work that Taylor could perform, including work as a toll collector, order filler, and small parts assembler. (Tr. 18). Accordingly, the ALJ found that

---

moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning ,e.g., few friends, conflicts with peers or co-workers. *Id.* at 34. A score of 61-70 is consistent with mild symptoms. *Id.*

Taylor was not disabled or otherwise eligible for SSI payments.

E.     DISCUSSION

Taylor complains of the ALJ's failure to comply with the regulations governing the evaluation of mental impairments and further complains that the ALJ's finding of no severe mental impairment is unsupported by substantial evidence.

The regulations outline a process (referred to as "the technique") to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Once an impairment is found, the administration will rate the degree of functional limitation resulting from the impairment. *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). Four broad functional areas are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the claimant's functional limitations, the administration determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id.* §§ 404.1520a(d), 416.920a(d).

At the initial and reconsideration levels, a standardized document referred to as a Psychiatric Review Technique Form (PRTF) is prepared to record how the above technique has been applied. *Id.* §§ 404.1520a(e)(1), 416.920a(e)(1). At the ALJ and Appeals Council levels, the written decision itself incorporates the pertinent findings and conclusions based on the technique, including specific findings as to the degree of limitation in each of the functional areas. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

**Findings, Conclusions and Recommendation of  
the United States Magistrate Judge–Page 7**

Citing the Fifth Circuit's opinion in *Stone v. Heckler*,[4] the ALJ found no medically determinable severe mental impairment because Taylor was in full remission from his alcohol dependence and used medication that appeared to provide good control of his depression and anxiety. (Tr. 15). The Commissioner does not dispute that the ALJ jumped to this finding of non-severity without expressly complying with each of the steps outlined in the administrative regulations. However, procedural perfection in administrative proceedings is not required, and the court will not vacate a judgment unless the substantial rights of a party have been affected. *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988).

Taylor asserts that there is obvious prejudice because a finding of no severe mental impairment is contrary to the report of the state agency medical consultant, A. Boulos, M.D., who offered the only expert medical opinion in the record. Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from nonexamining sources at the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p.

The ALJ acknowledged Boulos's mental residual functional capacity assessment, (Tr. 15), but took issue with those findings. In particular, the ALJ noted that Taylor was able to tend to his

---

[4] 752 F.2d 1099 (5th Cir. 1985).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

own personal needs, do yard work[5] and the household chores his girlfriend did not do, manage his own finances, maintain a relationship with his girlfriend, and attend church. (Tr. 15). The ALJ agreed that Taylor had demonstrated some concentration and memory deficits when tested, but also noted that Taylor was in no formal psychiatric treatment and had an assessed a GAF score of 60. The ALJ considered this score to be inconsistent with a severe impairment that would interfere with a claimant's ability to work. (Tr. 16).

Taylor asserts that the ALJ erred in rejecting Boulos's opinion without weighing that opinion in accordance with the regulations that address the weight assigned to medical source opinions. *See generally* 20 C.F.R. § 416.927(d). Relevant factors include the consistency and supportability of the opinion, and in this case, Boulos' assessment appears wholly consistent with the record, especially consulting examiner Reddy's diagnosis and findings.

Based on Reddy's evaluation, Boulos found moderate impairment in Taylor's concentration, persistence in pace. The ALJ dismissed Reddy's objective findings of concentration and memory deficits because Taylor was not in formal psychiatric treatment. The ALJ does not explain how Taylor's failure to participate in a formal mental health treatment program undermines the validity of Reddy's observations, and the ALJ also disregards the fact that Taylor's treating physicians have prescribed medication for years to control Taylor's depression and anxiety.

In addition, the ALJ relies on the GAF score of 60, which by definition reflects moderate

---

[5] Taylor asserts that the ALJ was incorrect in including yard work because Taylor repeatedly stated in his application paperwork that he did no yard work. There is no indication that any mental impairment limits Taylor's ability to perform yard work; however, Taylor reported during the internal medicine consultative examination that he experiences angina-type pain if he walks too far or performs activities like yard work. (Tr. 122). Taylor also saw a VA physician in August 2002 after feeling dizzy while working in his yard. (Tr. 251).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

symptoms, as support for finding no severe mental impairment at Step Two of the sequential evaluation process. Yet Boulos considered that same score and found Taylor's depression constituted a severe mental impairment that must be considered in assessing Taylor's residual functional capacity. (Tr. 147).

The ALJ fails to explain why his lay interpretation should prevail over an expert's uncontroverted interpretation of that score. There is no authority that renders a particular GAF score a determinative measure of disability for purposes of the Social Security Act, but that does not change the fact that Boulos considered this score in conjunction with other evidence to find Taylor's allegations of a severe mental impairment at least partially credible.

The ALJ also asserted that Taylor was able to work even after his original diagnosis of depression and only stopped working because of physical symptoms. The ALJ is only partially correct. Taylor stopped working in 1993 because of his drinking and physical condition, (Tr. 59, 123); however, he was not diagnosed with depression or an anxiety disorder until he entered a VA treatment program in 1996.

The ALJ's current decision fails to provide adequate support for his Step Two determination that Taylor's mental impairment was not severe. Taylor has established prejudice from the combined effect of the ALJ's failure to expressly apply the approved psychiatric technique, the ALJ's misstatement of various portions of the record, and errors in the ALJ's assessment of the state agency medical consultant's report.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with these proposed findings of fact and conclusions of law.[6]

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until June 23, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

---

[6] Remand is the appropriate relief. Boulos found a severe impairment, but did not consider Taylor disabled. Instead, he concluded that Taylor retained the ability to follow simple instructions, interact with coworkers and supervisors, and adapt to routine changes in the work setting . (Tr. 133)

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 23, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JUNE 2, 2005.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE